UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| BENJAMIN CAULTON, | ) |
| Plaintiff, | ) Case No. 1:07-cv-947 |
| v. | ) Honorable Gordon J. Quist |
| PATRICIA CARUSO et al., | ) |
| Defendants. | ) |

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Patricia Caruso, Cindi Curtain, and David Pratt. The Court will serve the complaint against Defendants Michael Haske, Mary Schiebner and Mrs. Michael Haske.

## Discussion

### I. Factual allegations

Plaintiff Benjamin Caulton presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Oaks Correctional Facility (ECF). He sues MDOC

Director Patricia Caruso and the following ECF employees: Warden Cindi Curtain, Assistant Deputy Warden (ADW) David Pratt, Resident Unit Advisor (RUM) Michael Haske, Assistant Resident Unit Supervisor (ARUS) Mary Schiebner, and Classification Director Mrs. Michael Haske.

Plaintiff, an African-American prisoner, alleges that on April 26, 2007, during the course of a major shakedown of the prison block, he and Tony Owens, a white prisoner, were let out of their cells in order to perform their prison jobs of setting up the dining hall for lunch. While they were working, unidentified officers brought seven inmates from the school area in Unit 1 to the shower area, where they were shaken down. After Plaintiff completed setting up, he left to get water to fill the hot cart before plugging it in. When he returned, the inmates had left the area. At that time, Captain Spencely was in the hall, and ADW Hughes, Officer Fink and ARUS Schiebner were in the Unit 1 control booth.

While Owens and Plaintiff were setting up the serving area of the kitchen, Owens told Plaintiff that someone had left two magazines on the back table in the middle kitchen. Owens and Plaintiff agreed that they would take and hold the magazines because they could not be left on the table during lunch. Plaintiff was unaware that the officer who had shaken down inmate Hicks had allowed Hicks to leave the magazines on the table. After his shakedown, the officer gave Hicks permission to come back to the kitchen area to retrieve the magazines. When Hicks saw that the magazines were no longer on the table where he left them, he came to the door of the kitchen and asked Owens and Plaintiff if they had removed them. Owens and Plaintiff told Hicks that they had, and Owens got up to retrieve the magazines for Hicks. At that moment, ARUS Schiebner came to the kitchen door screaming for Hicks to lock up and asked Hicks what he was doing. Hicks explained that he was getting his magazines as the other officer had allowed. Schiebner told Hicks he was not getting any books and ordered him to lock up. She then came into the kitchen and asked

Owens and Plaintiff, "Where are the books?" Plaintiff got up and found one of the books in the large trash bag box, where it had been stored. He gave it to Schiebner and purportedly reached into the box for the other. Schiebner, however, took the first magazine and walked out of the kitchen. She came back with four officers and told them Owens and Plaintiff were "passing" and that they needed to be shaken down again. The same officer who gave Hicks permission to leave the books took Owens to the Lower A shower. Plaintiff was shaken down in the Upper A shower. After completion of the shakedowns, an officer asked Schiebner what she wanted the officers to do with Owens and Plaintiff. She stated, "They are through, they were passing while on detail." When the officer explained to the Captain and ADW Hughes that this wasn't true, Schiebner was unable to write Owens and Plaintiff for a disciplinary report.

When they came out of their showers at 6:00 p.m., Plaintiff saw that both magazines were in the Unit 1 control booth. Plaintiff asked why they were there and was told that Schiebner had told them the magazines were abandoned property. The officers took the magazines to the officers' break room.

Plaintiff, knowing they belonged to Hicks, approached Office Lamirer, who returned the magazines to Hicks on the same day. On April 27, 2007, Lamirer served Owens and Plaintiff with minor misconduct charges for theft. Plaintiff reviewed the charges and found several errors, not least of which was that a theft could not be considered a minor misconduct. Plaintiff showed Officer Chick the errors, who agreed and had the disciplinary report pulled. He showed it to Officer Woods, who also agreed.

On April 28, 2007, without reviewing the report, Haske allegedly told all the inmates who attempted to speak with him about the disciplinary charge that Owens and Plaintiff were through for trying to pass during a major shakedown. On April 29, 2001, Haske went to the Unit 1

- 3 -

control booth and called out Owens and Plaintiff to hear evidence on the disciplinary report. Officer Woods told Haske that Plaintiff already had showed Officer Chick all of the errors in the report. Haske became upset and ordered Woods to destroy the reports. Haske never called Owens or Plaintiff to the hearing.

Later that day, Officer Woods allowed Owens and Plaintiff to go to work. On Sunday and Monday, Plaintiff and Owens were off duty. When Schiebner returned to work on April 30, she stopped at Plaintiff's door during rounds and told him that she had forgotten to sign the reports, "I wonder how that happen[ed]?" Later that day, while Plaintiff was in the law library, Schiebner ordered Officer Woods to shake down Owens' and Plaintiff's cells. On May 1, 2007, after Owens and Plaintiff had gone back to work, Schiebner and Haske left orders for Woods to pack Owens and Plaintiff for a move at 6:30 a.m. Plaintiff alleges that the move was ordered outside the usual schedule and that it was done in retaliation for their objections to the disciplinary reports. Then Owens and Plaintiff were moved to Unit 6 and Unit 2, respectively, where they were no longer eligible for kitchen duty.

Later that day, Plaintiff asked whether Haske had approved the move. Haske responded that he had done so because Owens and Plaintiff had "fronted him off." Plaintiff reminded Haske that, under the prison regulations, after Haske had ordered Owens to destroy the disciplinary reports, those reports could not be used to support a reclassification. Plaintiff wrote grievances against both Schiebner and Haske that same date, alleging abuse of the reclassification procedure. Rather than processing the grievances, Grievance Coordinator Mary McDonald brought both grievances to Haske, who asked Sgt. Burmus to get Plaintiff to sign off. Plaintiff declined because Haske already had arranged for his wife, Reclassification Director Haske, to reassign Owens to Unit 7, where Owens was again eligible to work in food service under the same supervisors.

Haske, however, had not arranged for Plaintiff's reassignment. Plaintiff's grievance was not processed until 14 days after it was filed, and then only after Plaintiff wrote a grievance against Mary McDonald for refusing to assign a grievance number. Plaintiff was assigned to duty as a laundry porter, where he could earn only a fraction of his wage in food service.

Plaintiff alleges that he was reassigned in retaliation for disputing an unfounded misconduct, in violation of the First Amendment, and that he was discriminated against on the basis of race when Owens was treated differently under identical circumstances, in violation of the Equal Protection Clause of the Fourteenth Amendment.

  II.  <u>Failure to state a claim</u>

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make any factual allegations against Director Caruso, Warden Cindi Curtain and Assistant Deputy Warden Pratt, though he implies that they failed to conduct an investigation in response to his grievances or otherwise failed to supervise their employees. A claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Id.*; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to demonstrate that Defendants Caruso, Curtain or Pratt engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff's claims will be ordered served against the remaining Defendants.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, Curtain and Pratt will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants RUM Michael Haske, ARUS Mary Schreiber, and Classification Director Mrs. Michael Haske.

An Order consistent with this Opinion will be entered.


Dated:  November 15, 2007              /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE