UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN CAULTON,

    Plaintiff,

vs.

PATRICIA CARUSO, *et al.*,

    Defendants.
    _____/

Case No. 1:07-cv-947

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Michael Haske and Amy Haske (docket no. 32).[1] Plaintiff responded to the motion by filing a document styled "Plaintiff's motion and affidavits in response to defendant's [sic] request for summary judgment and waiver of oral argument" (docket no. 37). This has been docketed as plaintiff's response to defendants' motion for summary judgment and will be treated as such.

**I.**    **Background**

Plaintiff filed a lengthy complaint and amended complaint setting forth the events that led to the filing of this action against Assistant Resident Supervisor (ARUS) Mary Schiebner, Classification Director Amy Haske and Resident Unit Manager (RUM) Michael Haske.[2] Plaintiff, an African American prisoner, alleges that these defendants violated two of his constitutional rights.

---

[1] The court notes that defendant Mary Schiebner has not yet been served in this action.

[2] The court's opinion regarding partial service summarized plaintiff's extensive allegations in detail. *See* docket no. 5. It is unnecessary for the court to reproduce that summary in this report. The court will, however, refer to plaintiff's allegations as necessary to address defendants' motion.

First, he alleges defendants re-assigned him to a lower paying prison job in retaliation for disputing an unfounded misconduct in violation of the First Amendment. Second, he alleges defendants discriminated against him based upon race, when a white prisoner, Owens, was treated differently under identical circumstances, in violation of the Equal Protection Clause of the Fourteenth Amendment. Plaintiff seeks compensatory damages of $100,000.00 and punitive damages of $100,000.00 from each defendant. Amend. Comp. Defendants Michael Haske and Amy Haske seek summary judgment with respect to these two claims.

## II.     Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III.     Plaintiff's failure to exhaust administrative remedies

Classification Director Amy Haske has moved for summary judgment on the ground that plaintiff's claims against her are unexhausted. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S.Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003),[3] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing

---

[3]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, e.g., the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U.

Here, Classification Director Amy Haske contends that the grievances filed against her are unexhausted because the MDOC rejected the grievances for noncompliance with the Policy Directives. This contention is without merit. Plaintiff filed two grievances against Amy Haske. The first grievance, ECF 07-05-3141-28I ("28I") was dated May 9, 2007. Defendants' Exh. 12.[4] This

---

[4] Exhibits attached to defendants' brief in support of summary judgment will be referred to as "Defendants' Exh. __."

grievance alleged that Classification Director Amy Haske discriminated against plaintiff for re-assigning him to his second job choice as a laundry porter, rather than his first job choice in the food service. *Id.* Plaintiff claimed that Amy Haske assigned him to the laundry position as a favor to her husband, RUM Michael Haske. *Id.* The grievance was rejected at Step I for failure to resolve the issue prior to writing a grievance in violation of Policy Directive 03.02.130. *Id.* In his Step II appeal, plaintiff added a discrimination claim against Amy Haske. *Id.* The warden addressed the merits of the appeal, denying the discrimination claim. *Id.* At the Step III appeal, it appears that the MDOC both affirmed the Step I rejection of the grievance and denied the grievance on the merits. *Id.*

The second grievance, ECF 07-08-3848-28A ("28A") was dated August 20, 2007. Defendants' Exh. 13. This grievance alleged that Classification Director Amy Haske discriminated against plaintiff when she re-assigned Owens, a white prisoner who was disciplined for the same infraction as plaintiff, to a food service job but did not re-assign plaintiff to his previous food service job. *Id.* Grievance 28A was rejected as duplicative of an earlier grievance, ECF 07-05-3130-02A ("2A"), the latter grievance being dated May 1, 2007 and directed against defendant Schiebner for retaliation. Defendants' Exhs. 2 and 13. The court notes that in the response to grievance 2A, Amy Haske denied that defendant Schiebner retaliated against plaintiff by moving him to a different unit, stating that "ARUS Schiebner had nothing to do with moving you to unit 2, I am the individual responsible for moving you to unit 2." Defendants' Exh. 2. In the Step II response to 28A, rather than rejecting the grievance as duplicative of 2A, the warden noted that this grievance dealt with the same occurrence as 2A, but alleged that Amy Haske was at fault for not hiring plaintiff in the food service, and that this hiring decision was racially motivated. Defendants' Exh. 13. At the Step III

5

appeal of 28A, it appears that the MDOC both affirmed the Step I rejection of the grievance and denied the grievance on the merits. *Id.*

Both 28I and 28A involved claims against Classification Director Amy Haske arising from plaintiff's job re-assignment. While it appears that the MDOC initially rejected both 28I and 28A, it ultimately addressed the merits of both grievances at the Step II and III appeals. The MDOC cannot address the merits of a grievance, and then assert failure to exhaust administrative remedies as an affirmative defense in federal litigation because the grievance was rejected for non-compliance with the department's grievance procedures. Accordingly, these two grievances filed against Classification Director Amy Haske should be considered exhausted.

## IV.     Plaintiff's § 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### A.     First Amendment retaliation claim

Here, plaintiff apparently alleges that defendants retaliated against him by failing to give plaintiff his preferred job in food service. Specifically, plaintiff appears to be asserting that ARUS Schiebner retaliated against plaintiff by moving him out of "Unit 1," which then caused plaintiff to lose his food service job assignment. Plaintiff alleges that Schiebner took this action

6

because she was dissatisfied with the dismissal of a minor misconduct report that she had written against plaintiff and that co-defendants RUM Michael Haske and Classification Director Amy Haske supported the retaliation.

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "If the plaintiff is able to make such a showing, the defendant has the burden of showing that the same action would have been taken absent the plaintiff's protected conduct." *Id.* If defendant can show that she would have taken the same action in the absence of the protected activity, then she is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399.

Defendants concede that plaintiff's act of filing a grievance was protected conduct for purposes of a retaliation claim. *See Smith*, 250 F.3d at 1037 (prisoners retain the First Amendment right to file grievances against prison officials). However, defendants contend that plaintiff's protected conduct was not a motivating factor in the alleged retaliation because plaintiff engaged in the protected conduct after the adverse act, and that in any event, plaintiff's transfer and prison job re-assignments were not adverse acts.

The court agrees with defendants that plaintiff's exercise of his First Amendment right to file a grievance was a motivating factor in the decision to transfer him to another housing unit. On April 26, 2007, ARUS Schiebner wrote a minor misconduct report against plaintiff and prisoner Owens related to the theft of another prisoner's magazines in the dayroom. Michael Haske Aff. at ¶ 3; Minor misconduct violation and hearing report, Defendants' Exh. 2. RUM Michael Haske acted as the hearing officer in the matter and dismissed the misconduct report because it did not include a staff signature. Michael Haske Aff. at ¶ 3. On May 1, 2007, Michael Haske moved both plaintiff and prisoner Owens out of the housing unit, "for the good order of the housing unit." *Id.* at ¶ 4. That same day, plaintiff filed grievances against ARUS Schiebner and RUM Michael Haske alleging that his transfer was in retaliation for the dismissal of the misconduct report. Grievance 2A; Grievance ECF 07-05-3130-26D ("26D"), Defendants' Exh. 11.

Plaintiff's grievances filed on May 1, 2007, 2A and 26D, failed to meet the causation requirement, because he filed the grievances after defendants' decision to transfer him to another unit. Michael Haske Aff. at ¶¶ 3-4, Defendants' Exh.1; Amy Haske Aff. at ¶ 9, Defendants' Exh. 3. Accordingly, plaintiff's claim that defendants transferred him in retaliation for filing these grievances is frivolous. Plaintiff has not demonstrated that he engaged in any protected other conduct that could serve as the basis of a First Amendment retaliation claim. Under these circumstances, the court should defer to RUM Michael Haske's decision regarding the management of the housing unit. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520,

547 (1979). Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.[5]

### B.    Fourteenth Amendment claims

### 1.    Equal Protection

Plaintiff alleges that Classification Director Amy Haske violated the Equal Protection Clause of the Fourteenth Amendment when she assigned Owens, but not plaintiff, to work in a prison food service job. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To establish an equal protection claim under § 1983, a plaintiff must show that he is a member of a protected class and that he was intentionally and purposefully discriminated against because of his membership in that protected class. *Jones v. Union County, Tennessee*, 296 F.3d 417, 426 (6th Cir. 2002); *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000); *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir.1990). In order to establish a violation of the Equal Protection Clause in the context of a racial discrimination claim, an inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials. *Copeland*, 57 F.3d at 480.

In his affidavit, plaintiff stated that both he and Owens were similarly situated, i.e., they were subject to re-assignment by Amy Haske; they were terminated from their positions after the magazine incident; and they were subject to Policy Directive 05.01.100, under which they could

---

[5] Because plaintiff has failed to demonstrate a causal link between protected activity and the alleged adverse act, the court need not address the issue of whether a prison cell transfer or job transfer is an adverse act for purposes of a First Amendment retaliation claim.

not be re-classified to a kitchen assignment before the expiration of 120 calendar days after their termination. Caulton Aff. at ¶ 3, Plaintiff's Exh. 6;[6] Policy Directive 05.01.100, ¶ J.5., Defendants' Exh. 4. Nevertheless, Owens was allowed to return to a kitchen assignment before the expiration of the 120 calendar days under Policy Directive 05.01.100. *Id.* at ¶ 4. In addition, Owens was allowed to choose kitchen assignment as both his primary and secondary assignment, while plaintiff was told that his primary and secondary assignments had to be different. *Id.* at ¶¶ 5-8. Finally, plaintiff points out that Owens had no experience or training to receive a preference for reclassification into food services. *Id.* at ¶¶ 7-8.

Plaintiff also presented a copy of a kite sent to Amy Haske on June 25, 2007, regarding the receipt of skilled pay for his new job as a laundry porter. Kite, Plaintiff's Exh. 5. In her response kite, Amy Haske stated:

> Mr. Caulton, Please do not kite me on this again. I am not going to pay you skilled pay for laundry -- there are no skilled laundry jobs.

*Id.* (emphasis in original). In addition, plaintiff submitted affidavits from two other inmates to support his equal protection claim. However, neither of these affidavits is particularly helpful to plaintiff. Leon Johnson stated that he requested food service as his only choice of employment, but that Amy Haske assigned him to a position as a laundry porter due to institutional need. Johnson Aff., Plaintiff's Exh. 3. James Jones stated that on May 10, 2007, while assigned to the food service, he was instructed to train inmate Owens to be in charge of the serving line. Jones Aff., Plaintiff's Exh. 5.

---

[6] Exhibits attached to plaintiff's response to the motion for summary judgment will be referred to as "Plaintiff's Exh. __."

In her affidavit, Amy Haske points out that plaintiff was housed in Unit 1, which is a transition unit in which inmates remain for only 30 to 60 days, until a bed or cell opens in another general population unit. Amy Haske Aff. at ¶ 4. A job assignment in Unit 1 ends when the inmate is moved to another unit. *Id.* at ¶ 5. On May 1, 2007, plaintiff was moved from Unit 1 to a general population unit, Unit 2. *Id.* at ¶ 9. Plaintiff requested job assignments in laundry or food service and was placed in both work pools on May 8, 2007. *Id.* at ¶¶ 9-10. A laundry assignment was available the next day, and plaintiff was given that job. *Id.* at ¶ 11. Pursuant to Policy Directive 05.02.110A, once a prisoner has been placed in a job assignment, the Classification Director removes the prisoner from other work assignment waiting pools. *Id.* at ¶ 12. Accordingly, plaintiff was removed from the food service waiting pool after being assigned to a laundry job as requested. *Id.*

Prisoner Owens was moved from Unit 1 to Unit 6 on May 1, 2007. *Id.* at ¶ 13. He was not reclassified in Unit 6. *Id.* Owens was moved to a different general population unit, Unit 7, on May 7, 2007. *Id.* On that date, Owens signed a Program Classification Report, requested a food service job and was placed in the food service work pool on May 8, 2007. *Id.* at ¶¶ 13-14. A food service assignment became available the next day, and Owens was given the assignment. *Id.* at ¶ 15. Amy Haske's affidavit does not respond to plaintiff's claim that he was required to request two different job assignments (food service and laundry) while Owens was allowed to request only one job assignment (food service). However, the court notes that plaintiff's May 2, 2007 work classification report requesting food service and laundry positions was processed with an MDOC employee other than Amy Haske. *See* Defendants' Exh. 6.

Viewing these facts in the light most favorable to plaintiff, it would appear that Classification Director Amy Haske treated plaintiff differently from Owens by allowing Owens to request only one type of job assignment. However, even if this is true, plaintiff cannot establish a violation of his equal protection rights simply by showing that another inmate was treated differently. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992); *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988). "[M]ere disparate impact is insufficient to demonstrate an equal protection violation." *Copeland*, 57 F.3d at 481. Rather, to maintain a cause of action under the Equal Protection Clause, plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Booher*, 843 F.2d at 944. *See Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir. 1986) (a plaintiff's equal protection claim must allege that the wrong was directed toward her as a member of a class or group singled out for discriminatory treatment). Plaintiff has failed to provide any evidence that Classification Director Amy Haske's job assignment decision was motivated by race or that he was victimized because of a suspect classification. *Booher*, 843 F.2d at 944; *Joyce*, 783 F.2d 56. Accordingly, defendants are entitled to summary judgment on plaintiff's equal protection claim.

### 2. Due Process

Finally, plaintiff alleges that defendants violated his due process rights under the Fourteenth Amendment when they failed to give him a job in the correctional facility's food service. Plaintiff's claim is without merit. To establish a procedural due process claim pursuant to § 1983, plaintiff must establish three elements: (1) that he has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that he was deprived of this protected interest within the meaning of the Due Process Clause, and (3) that

the state did not afford him adequate procedural rights prior to depriving him of his protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Here, plaintiff has no constitutionally protected property or liberty interest in prison employment arising from the Fourteenth Amendment. *See, e.g., Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir.1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[i]t is well established . . . that no prisoner has a constitutional right to a particular job or to any job"). Accordingly, defendants are entitled to summary judgment on plaintiff's due process claim.

## V.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 32) be **GRANTED** and that defendants Michael Haske and Amy Haske be dismissed from this action.


Dated:  January 26, 2009                                  /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).